C. L. TYRRELL, as Trustee of the Estate of Roy E. Shoaff Drilling Co., Inc., Bankrupt, Appellant,

v.

DOBBS INVESTMENT CO. (formerly known as Dobbs GM Diesel, Inc.), Appellee.

No. 7660.

United States Court of Appeals Tenth Circuit.

Oct. 23, 1964.

Arthur J. Seifert, Denver, Colo. (John W. Low, Denver, Colo., on the brief), for appellant.

Thomas J. Kerwin, Denver, Colo. (Martin J. Harrington and Hodges, Silverstein, Hodges & Harrington, Denver, Colo., on the brief), for appellee.

Before MURRAH, PHILLIPS and LEWIS, Circuit Judges.

PHILLIPS, Circuit Judge.

The Roy E. Shoaff Drilling Co., Inc., hereinafter referred to as the Drilling Company, was adjudicated a bankrupt on June 8, 1960. Thereafter, Tyrrell, the duly qualified and acting Trustee of the bankrupt estate, commenced the instant action to recover the value of two diesel engines alleged to have been transferred by the Drilling Company to Dobbs Investment Co., hereinafter referred to as Dobbs, as a preference under § 60 of the Bankruptcy Act. The parties filed a joint motion requesting the court to determine in advance of trial the issue of whether the security instrument through which Dobbs claimed title to the engines was "filed" so as to perfect the transfer of the engines within the meaning of § 60, sub. a(2) of the Bankruptcy Act,

and if it was so filed, the date on which such filing was perfected.

The trial court found and decreed that the security instrument was filed so as to perfect the transfer of the engines within the meaning of § 60, sub. a(2), and that it was filed with the County Clerk of Kimball County, Nebraska, between April 4, 1960, and April 13, 1960. The Trustee has appealed.

The parties stipulated the facts considered by the trial court on their joint motion for ruling in advance of trial. Such stipulation, the exhibits attached thereto, and the uncontroverted facts set forth in the pretrial order disclose the following facts:

On March 23, 1960, Roy E. Shoaff, the president, director, and sole stockholder of the Drilling Company, executed an instrument designated as a chattel mortgage, and hereinafter referred to as the security instrument, giving Dobbs a security interest in the two diesel engines. The face of the security instrument contains a detailed description of the two engines, the amount secured, the down payment made, the unpaid cash balance, the financing charge, the total of the unpaid cash balance and the financing charge, the number, amount and due dates of the installment payments to be made by the debtor, a mortgage granting clause, the date of execution, the name and signature of the debtor and the name and signature of the creditor.

The security instrument further contained the following provisions:

"The Mortgagor understands and agrees that the provisions on the reverse side hereof, hereby incorporated by reference, constitute a part of this chattel mortgage.

\* \* \* \* \* \*

"The within chattel mortgage is hereby assigned to Yellow Manufacturing Acceptance Corporation under the provisions of the 'Seller's (Mortgagee's) Assignment Recommendation and Guaranty' on the reverse side hereof read by the under-

signed and made a part hereof as if fully set forth herein."

The assignment to Yellow Manufacturing Acceptance Corporation, hereinafter referred to as YMAC, was duly executed by Dobbs.

The reverse side of the security instrument contained the terms of the assignment to YMAC and a list of 15 provisions or conditions of the security transaction dealing with possession and use of the engines, insurance requirements, penalties for late payment of installments, repossession, warranty, assignment, and prepayment.

The engines were to be installed on a drilling rig owned by the Drilling Company and covered by a security instrument to Mid-Continent Supply Co. On March 30, 1960, Mid-Continent and the Drilling Company executed a "Consent and Waiver" agreeing that regardless of the manner in which the engines were installed on the rig they would not lose their character as separate personal property, could be removed from the rig at any time, would remain subject to the terms of the security instrument of Dobbs, and that Mid-Continent would not gain any interest in the engines.

On April 4, 1960, YMAC mailed a true copy of the face of the security instrument, a true copy of the Consent and Waiver, a check in the amount of $2 in payment of the filing fee, and a letter requesting that the two documents be filed, from its office in Denver, Colorado, to the "County Clerk, Banner County, Kimball, Nebraska."

Kimball, Nebraska, is the county seat of Kimball County. Harrisburg, Nebraska, is the county seat of Banner County. Kimball County was the proper place for filing the security instrument.

On April 13, 1960, nine days after the documents were mailed, YMAC received them back from the County Clerk of Banner County, Nebraska, with a notation on the bottom of YMAC's forwarding letter

that liens on motor vehicles can be filed only on the certificate of title of the vehicle.

On April 14, 1960, YMAC mailed the two documents to the County Clerk, Kimball County, Kimball, Nebraska, with a letter explaining that the diesel engines were not motor vehicles and requesting that the documents be filed. The two documents were filed by the County Clerk of Kimball County on April 19, 1960, and the parties have stipulated that he received them on or about April 19, 1960.

Thereafter, the true copy of the Consent and Waiver was retained in the records of the County Clerk of Kimball County, but the true copy of the security instrument was, by error, returned by mail to YMAC. It was received by YMAC on April 20, 1960.

In June, 1962, the true copy of the face of the security instrument was found in YMAC's files and returned to the County Clerk of Kimball County.

■ We think that although the security instrument is designated a chattel mortgage, in fact it more closely resembles a conditional sales agreement, but regardless of the nature of the security instrument, we are of the opinion that the security transaction was perfected under Nebraska law on April 19, 1960, when the Clerk of Kimball County received and filed the true copies of the face of the security instrument and the Consent and Waiver. The information contained on the face of the security instrument was sufficient to apprise third persons of the exact interests of the parties, the amount due, a complete description of the engines, and the number and amount of the installment payments from which the due date could be determined, and that was sufficient compliance with the filing statutes of Nebraska relating to chattel mortgages[1] and conditional sales contracts,[2] respectively.

■ Furthermore, the validity of the filing of the security instrument was not

1. Gillespie v. Brown, 16 Neb. 457, 20 N.W. 632, 634; Nebraska Revised Statutes, 1943, § 36-301.

2. Nebraska Revised Statutes, 1943, § 36-207.

affected by the failure of the Deputy County Clerk to retain it in the records of the Office of the County Clerk.[3]

We now turn to a consideration of whether the transfer was "for or on account of an antecedent debt" under the provisions of § 60 of the Bankruptcy Act.

Section 60 of the Bankruptcy Act, 11 U.S.C.A. § 96, provides in part as follows:

> "§ 96.  *Preferred creditors*
>
> "(a) (1)  A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.
>
> "(2)  For the purposes of subdivisions (a) and (b) of this section, a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee. * * *
>
> *     *     *     *     *     *
>
> "(7) Any provision in this subsection a to the contrary notwithstanding if the applicable law requires a transfer of property other than real property for or on account of a new and contemporaneous consideration to be perfected by recording, delivery, or otherwise, in order that no lien described in paragraph (2) of this subsection could

become superior to the rights of the transferee therein, * * * the time of transfer shall be determined by the following rules:

> "I.   Where * * * (B) the applicable law specifies no such stated period of time or where such stated period of time is more than twenty-one days, and compliance therewith is had within twenty-one days after the transfer, the transfer shall be deemed to be made or suffered at the time of the transfer.
>
> "II.   Where compliance with the law applicable to the transfer is not had in accordance with the provisions of subparagraph I of this paragraph, the transfer shall be deemed to be made or suffered at the time of compliance therewith, * * *."

Under § 60, supra, if the security instrument was filed within 21 days of the date of its execution, i. e., the date of the transfer, as the trial court found, then the transfer will be deemed to have been made at the time of such execution and the transaction does not give Dobbs a voidable preference.

■ The Trustee contends that the court erred in finding that the security instrument was perfected by filing within 21 days of the date of its execution, because there was no proof that the County Clerk of Kimball County received the documents for filing during that period. We agree.

Dobbs argues that due to the fact that the documents carried the specific address, "Kimball, Nebraska," the Post Office would have disregarded the "Banner County" portion of the address and would have delivered the documents to "County Clerk * * * Kimball, Nebraska," but there is no evidence in the record from which it can be determined what the Post Office did, except that at some time between April 4, 1960, and April 13, 1960, the documents were in

---

3.  Perkins v. Strong, 22 Neb. 725, 36 N.W. 292;  Deming v. Miles, 35 Neb. 739, 53 N.W. 665, 666;  Watkins v. Bugge, 56 Neb. 615, 77 N.W. 83, 84;  Powers v. Spiedel, 84 Neb. 630, 121 N.W. 968, 969.

the hands of the County Clerk of Banner County, from which it could as reasonably be inferred that the Post Office delivered the documents to the County Clerk of Banner County, as that the County Clerk of Kimball County received them and forwarded them to the County Clerk of Banner County.

In order to sustain the position of Dobbs, it would be necessary to infer that the documents were first delivered to the County Clerk of Kimball County, and that the County Clerk of Kimball County then mistakenly delivered or forwarded the documents to the County Clerk of Banner County. Neither of such inferences can be legitimately drawn from the facts. Inferences may be drawn only from facts in evidence. They may not be based upon mere speculation, guess, or conjecture as to what might have happened.[4]

Further, Dobbs's argument requires the pyramiding or imposition of one inference upon another to establish the facts necessary to its case. That is not permissible and amounts to mere speculation.[5]

Nor is Dobbs aided by the fact that a period of nine days elapsed between the time YMAC mailed the documents and the time it received them back from the County Clerk of Banner County. The further facts that the documents took five days to reach the County Clerk of Kimball County the second time they were mailed by YMAC, and that the copy of the security instrument which was erroneously returned by the Deputy Clerk to YMAC took only one day to reach YMAC allows a reasonable inference that the mail schedule between Denver, Colorado, and the Panhandle of Nebraska varies considerably, but such facts do not reasonably allow an inference that the County Clerk of Kimball County received the documents at any time between April 4, 1960, and April 13, 1960, and then for-

warded them to the County Clerk of Banner County.

Reversed and remanded for further proceedings in accordance with this opinion.

---

4. Waters v. National Life & Accident Ins. Co., 10 Cir., 156 F.2d 470, 472–473.

5. Tucker v. Traylor Engineering & Manufacturing Co., 10 Cir., 48 F.2d 783, 786;

Gas Service Co. v. Hunt, 10 Cir., 183 F.2d 417, 420; Franks v. Groendyke Transport, 10 Cir., 229 F.2d 731, 735.