**James D. HODGSON, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,**

v.

**Paul OKADA, and Okada Farms, Inc., a corporation, Defendants-Appellants.**

**Nos. 71–1381, 72–1043.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Sept. 11, 1972.

Decided Feb. 7, 1973.

---

Ronald Whiting, U. S. Dept. of Labor, Washington, D. C. (Richard F. Schubert, Sol. of Labor, Carin Ann Clauss, Associate Sol., Harper Barnes, Regional Sol., Donald S. Shire and Judith Bleich Kahn, U. S. Dept. of Labor, Washington, D. C., on the brief), for plaintiff-appellee.

Eugene H. Tepley, Denver, Colo., for defendants-appellants.

Before BREITENSTEIN, McWILLIAMS and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

The Secretary of Labor brought this action under § 17 of the Fair Labor Standards Act as amended 29 U.S.C. § 201 et seq. to enjoin Paul Okada and Okada Farms Incorporated (Okadas) from violating the minimum wage, recordkeeping and shipping provisions, and restraining them from withholding $1,279.90 in unpaid wages. The Court, in a bifurcated trial, held that the Okadas and Ramon Medelez, the crew leader, were joint employers of the farm laborers and enjoined the Okadas from violating the Act, 326 F.Supp. 514. In the second trial the Court restrained the Okadas from withholding unpaid wages from July 21, 1970 through August 20, 1970.

The Okadas operate a farm in Adams County, Colorado on 52 acres of land owned by them and 200 acres leased by them. They grow cucumbers transported in interstate commerce under an agreement with the Henderson Pickle Company (HPC) which is owned and operated by an uncle of Paul Okada. HPC furnishes the Okadas with the seed and arranges for harvesting and hauling the

cucumbers to its plant. The cost of the seed and harvesting is debited to the Okadas' account. HPC hired Ramon Medelez and his crew to harvest the cucumbers. Ramon received $1.25 per c. w. t. for the merchantable crop. He paid his crew 50¢ per sack or $1.00 per c. w. t. The amount paid to Ramon by HPC was debited to the Okadas' account.

The Okadas were investigated three times prior to February of 1967. Each investigation disclosed violations of the Act. Paul Okada was advised to keep proper records and to pay the minimum wages to the cucumber pickers as prescribed under the Act. Paul Okada relied on HPC to keep the records. The investigators gave the Okadas a copy of the Fair Labor Standards Act and a pamphlet entitled "Hired Farm Workers".

The migrant workers were recruited by Frank Pena, labor recruiter for HPC and Great Western Sugar Company. Pena assigned Ramon Medelez and his family crew to the Okadas. The crew lived in quarters on lands leased by the Okadas. The quarters were maintained by HPC. Frank Pena talked to Ramon only once during the month he worked for the Okadas. This conversation occurred on the first day of work. Pena instructed Ramon how to harvest the cucumbers. Felipe Guyton, an HPC employee, and Pena were required by HPC to visit the farms twice a week. However, they did not give Ramon any further instructions. Paul Okada's father, Eddie, worked in the cucumber fields almost daily. He instructed Ramon's crew how to perform their work. Eddie Okada directed Ramon not to rehire certain lazy workers and he told Pedro Medelez that if he didn't want to work he could leave. Pedro stayed on the job for a week and then left.

The Okadas contend that: (1) the trial court lacked jurisdiction to hear the case; (2) an injunction was not warranted; (3) they were not employers of the migrant workers and Ramon was an independent contractor; and (4) the Court made an arbitrary money award.

The Okadas allege that the trial court did not have jurisdiction to hear the case because of two statutory exemptions. Section 213(a)(6)(A) provides that the title does not apply to any employee employed in agriculture:

". . . if such employee is employed by an employer who did not, during any calendar quarter during the preceding calendar year, use more than five hundred man-days of agricultural labor, . . ."

Section 203(e)(1) states that "employee" does not include:

"any individual employed by an employer engaged in agriculture if such individual is the parent, spouse, child, or other member of the employer's immediate family, . . ."

The Okadas allege that they met both exemptions.

At the pre-trial conference Paul Okada testified that a different crew worked at the farm in 1969, the year preceding the calendar quarter. The Court stated that the problem disposed of itself in that the parties had agreed in a Pre-trial Stipulation and Order that during 1969 crews worked on Okadas' crops and that if that time were included the Okadas would have used more than 500 man-days of agricultural labor. Not only did the Okadas fail to affirmatively plead these exemptions in their answer as required by Rule 8(c), Fed. R.Civ.P., but also they were not raised as issues for consideration in the pre-trial order as required by Rule 16, Fed. R.Civ.P.

■ Section 203(e)(1) applies to workers related to the employer claiming the exemption. The Okadas are claiming the exemption. Ramon is not a party to this suit. Therefore the exemption does not apply because the crew members are not the Okadas' immediate family.

■ The Okadas contend that the trial court erred in granting an injunc-

tion because an injunction was not requested in the pre-trial conference. Also, the Pre-trial Stipulation and Order did not refer to injunctive relief. Accordingly, the Okadas contend that the injunction was beyond the scope of the issues to be tried, wholly unnecessary and an abuse of the Court's discretion. This argument has no merit. There was no agreement between the parties which would deprive the Court of its inherent power to issue an injunction if the Okadas were held to have violated the Act. The only effective future relief would be an injunction against further violations of the Act. Furthermore, the Secretary's complaint prayed for injunctive relief. The facts clearly warranted the trial court's grant of injunctive relief in view of repeated violations of the Act by the Okadas. Hodgson v. Humphries, 454 F.2d 1279 (10th Cir. 1972).

The Okadas allege that the evidence does not sustain the finding that they were employers of the farm workers. They contend that they did not exercise regular supervision over the workers constituting control and that the only employer of the workers was Ramon. They also allege that if Ramon was an employer, they cannot be employers too. Inasmuch as HPC hired Ramon, the Okadas allege that they did not have to comply with the Act. The Okadas rely on the facts that: (1) three crew members stated in depositions that Eddie Okada spoke to them only once or twice in four weeks; (2) Eddie did not speak to Ramon because Ramon did not speak English; (3) one crew worker said Pena gave him instructions; (4) Eddie Okada told Ramon not to hire certain workers but that Ramon did as he wished; (5) Eddie fired no one; and (6) Eddie gave instructions only because he was working on his irrigation project.

Section 203(d) of 29 U.S.C. defines "employer" as:

" . . . any person acting directly or indirectly in the interest of an employer in relation to an employee . . . .".

Section 203(g) states that:

" 'Employ' includes to suffer or permit to work."

Referring to these definitions the court in Walling v. Portland Terminal Co., 330 U.S. 148, 67 S.Ct. 639, 91 L.Ed. 809 (1947), said:

"This Act contains its own definitions, comprehensive enough to require its application to many persons and working relationships, which prior to this Act, were not deemed to fall within an employer-employee category." 330 U.S. at 150–151, 67 S.Ct. at 640.

In Mitchell v. Hertzke, 234 F.2d 183 (10th Cir. 1956), Hertzke & Sons were growers required to supply snap beans to Kuner-Empson. The pickers (family units) were hired through a crew chief, Rodriguez, who paid the workers. The trial court held that Rodriguez and the Hertzkes were employers under the Act and that Kuner-Empson was not. On appeal the Court held that Kuner-Empson was not an employer of the workers because it had no control over the workers. The Court enjoined Rodriguez and the Hertzkes from violating the Act. Rodriguez was the labor contractor just as Ramon was in the case at bar. The Hertzkes were the growers in the same position as the Okadas and Kuner-Empson was the processor similar to HPC. Here, the only regular supervision of the workers came from the Okadas and they benefited from the work performed. The Okadas had the right to direct daily labor on the farm. HPC did not have a representative present on a daily basis. The Okadas suffered if the cucumbers were not harvested or if they did not meet HPC specifications. On at least one occasion Eddie threatened to fire a worker. The cost of the seed and harvesting operations was debited to the Okadas' account and they were paid the difference between these amounts and the value of the cucumbers delivered to HPC.

In accord with *Mitchell* and the circumstances of this case, we hold that

the Okadas were employers of the farm workers because they were acting directly or indirectly in the interest of an employer in relation to the employees. We will not reach the issue of whether Ramon was an independent contractor. That issue is irrelevant in determining whether the Okadas are responsible under the Act.

The Okadas contend that the money award was arbitrary. The trial court found that "there are no adequate records which permit anyone to compute, with any degree of certainty at all, the amount of underpayment." The Court proceeded to make its computations of underpayment to the pickers on the basis of testimony of three of the pickers contained in depositions, which the trial court observed to "constitute a maze of total and complete confusion." The Court then averaged the wages from the deposition testimony, made adjustments, and arrived at the figure of $1,279.90 as the amount due predicated on thirteen pickers who worked 5½ days per week or 44 hours per week for four weeks.

 The Government did place in evidence certain exhibits which prove that Ramon Medelez received from HPC the sum of $4,421.23 as the "Amount Due Pickers". However, there is no evidence that Ramon paid this sum to the pickers. The trial court did not infer that the pickers received this sum of wage payments from Ramon. The trial court apparently did not accept the proposition that because HPC paid Ramon a total sum out of which the pickers should have received $4,421.23 that it must infer that the pickers were so paid. Such an inference would, from this record, be based on mere speculation, guess or conjecture. Tyrrell v. Dobbs Investment Co., 337 F.2d 761 (10th Cir. 1964); Waters v. National Life & Accident Ins. Co., 156 F.2d 470 (10th Cir. 1946). The findings of the trial court are not clearly erroneous. It is not the function of the Court of Appeals to infer material facts. Cross v. Pasley, 267 F.2d 824 (8th Cir. 1959). Nor may the appellate court make a controlling inference which the trial court has not made and which, if done, would in effect constitute a trial de novo. Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969). Where different inferences may be drawn, appellate courts will not substitute their judgment for that of the trial court. Colby v. Cities Service Oil Company, 254 F.2d 665 (10th Cir. 1958).

Affirmed.