Maria Guadalupe **GONZALEZ**, Sandra Iris Gonzalez, Geronimo Gonzalez, Oscar Jiminez, Jr., and Jose Luis Paz, Plaintiffs,

v.

Monico **PUENTE** and Holmes and Holmes, Defendants.

**Civ. A. No. DR–85–CA–16.**

United States District Court, W.D. Texas, Del Rio Division.

Sept. 2, 1988.

---

David Riojas, Texas Rural Legal Aid, Inc., Eagle Pass, Tex., for plaintiffs.

Alberto Ramon, Eagle Pass, Tex., for defendant Monico Puente.

Dawn Bruner Finlayson, Matthews & Branscomb, San Antonio, Tex., for defendant Holmes and Holmes.

## ORDER

PRADO, District Judge.

On this date came on to be considered Defendant Holmes and Holmes' motion for summary judgment and supporting brief, Plaintiffs' motion for partial summary judgment and supporting brief, Plaintiffs' brief in response to Defendant Holmes and Holmes' summary judgment brief, and Defendant Holmes and Holmes' response on summary judgment issues. After careful consideration of the summary judgment pleadings and of the oral argument of counsel, the Court finds that Defendant Holmes and Holmes was neither an "employer" within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d), nor an "agricultural employer" within the meaning of the Migrant and Seasonal Agricultural Worker Protection Act of 1983, 29 U.S.C. § 1802(2). Accordingly, Defendant Holmes and Holmes' request for summary judgment is granted and Plaintiffs' request for partial summary judgment is denied.

## I.  FACTS

This action centers around events and business relationships as they stood on one day, May 31, 1983. The issues presented here relate to the work performed by Plaintiffs on that date and to the business relationship between the co-defendants.[1]

On May 30, 1983, Maria Guadalupe Gonzalez contacted crew leader Monico Puente to determine if he had work for her. She was instructed that if she wanted to work she could come to Mr. Puente's home in Eagle Pass, Texas early the following morning. The next day, Maria Guadalupe Gonzalez, her daughter Sandra Iris Gonzalez, her son Geronimo Gonzalez, her brother Oscar Jiminez, Jr., and her nephew Jose Luis Paz all walked to Mr. Puente's house and were hired to pick cucumbers for Mr. Puente that day. The Plaintiffs boarded a bus owned and driven by Mr. Puente.

None of the Plaintiffs had ever picked cucumbers before. Upon their arrival at Bracher Farms, they were given bushel baskets and instructed by Mr. Puente's supervisor, Benito Alvarez, on the proper method of picking cucumbers.

Once the crop was harvested, Maria Guadalupe Gonzalez, Sandra Iris Gonzalez, and Jose Luis Paz boarded the bus to return home. Geronimo Gonzalez and Oscar Jiminez, Jr. were asked if they would stay at the field to load the cucumber bags. They agreed and loaded the cucumber bags on trucks owned by Mr. Puente. The cucumbers were loaded and taken to the Holmes and Holmes packing shed. Geronimo Gonzalez and Oscar Jiminez, Jr. then traveled back to Eagle Pass, Texas, with supervisor Benito Alvarez in a Suburban owned by Mr. Puente.

The field where the cucumbers were picked was farmed and owned by Bracher Farms. Holmes and Holmes and Bracher Farms contracted for Holmes and Holmes to buy the ripe cucumbers. Mr. Puente is a

---

1. The facts relating to work performance are taken directly from Plaintiffs' complaint, the parties' stipulations of fact, and the depositions of Plaintiffs.

licensed crew leader engaged in the business of hand-harvest labor. The cucumbers were harvested at Bracher Farms by Mr. Puente's crew on May 31, 1983, and delivered to the Holmes and Holmes packing shed for sorting and processing. The payment of Mr. Puente for his services, made by Holmes and Holmes, was debited from Bracher Farms' proceeds.

## II. DISCUSSION

Plaintiffs seek to recover damages from Holmes and Holmes pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and pursuant to the Migrant and Seasonal Agricultural Worker Protection Act of 1983 ("MSAWPA"), 29 U.S.C. § 1801, *et seq.* Admitting they worked directly for Defendant Monico Puente, Plaintiffs seek recovery from Holmes and Holmes under a joint employer theory.

The term "employer" is defined at 29 U.S.C. § 203(d) of the FLSA. That definition states, in relevant part,:

"Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee....

The FLSA defines the term "employ" as including "to suffer or permit to work." 29 U.S.C. § 203(g).

The term "agricultural employer" is defined at 29 U.S.C. § 1802(2) of the MSAW-PA. That definition states, in part,:

The term "agricultural employer" means any person who owns or operates a farm, ranch, processing establishment, cannery, gin, packing shed or nursery, ... and who either recruits, solicits, hires, employs, furnishes, or transports any migrant or seasonal agricultural worker.[2]

The MSAWPA goes on to define the term "employ" as that term is defined under the FLSA. 29 U.S.C. § 203(g).

In interpreting the "employer" concept under the FLSA and the MSAWPA, the Courts have developed the concept of a joint employment relationship. *See, Hodgson v. Griffin and Brand of McAllen, Inc.*, 471 F.2d 235, 237 (5th Cir.), *reh'g*

denied, 472 F.2d 1405, *cert. denied,* 414 U.S. 819, 94 S.Ct. 43, 38 L.Ed.2d 51 (1973); *Maldonado v. Lucca,* 629 F.Supp. 483, 487 (D.N.J.1983). The Department of Labor has promulgated a regulation addressing the joint employment relationships. It states, in part:

[I]f the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employees work for all of the joint employers during the workweek is considered as one employment for purposes of the Act. In this event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA]....

29 C.F.R. § 791.2(a). The regulation goes on to list examples of joint employment relationships, including "where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee" and where "one employer controls, is controlled by, or is under common control with the employer." 29 C.F.R. § 791.2(b).

In enacting the MSAWPA, Congress specifically embraced the joint-employer rationale:

[W]here an agricultural employer or association asserts that the agricultural workers in question are the *sole* employees of an independent contractor/crewleader or where there exists other various working arrangements, including the sharing of such workers between several agricultural employers or agricultural associations, it is the intent of the Committee that the formulation as set forth in *Hodgson v. Griffin and Brand of McAllen, Inc.,* 471 F.2d 235 (1973) be controlling. This decision makes clear that even if a farm labor contractor is found to be a bona fide independent contractor, that this status does not as a matter of law negate the possibility that an agricultural employer or association may be

---

**2.** Although the MSAWPA identifies packing sheds as "agricultural employers," Plaintiffs do not claim to be employees of the Holmes and Holmes packing shed.

a joint employer of the harvest workers and jointly responsible for the contractor's employees.

The *Griffin and Brand* decision summarizes the proper approach and the appropriate criteria to be used in making these determinations and it is the Committee's intent that such construction be applied for "joint employer" determinations made under this Act. The Committee wishes as well to make clear that the absence of evidence on any one or more of the criteria listed does not preclude a finding that the agricultural association or agricultural employer was a joint employer along with the crew leader. *See Hodgson v. Okada*, 472 F.2d 965 (1973).

H.R.Rep. No. 97–885, 97th Cong., 2nd Sess., *reprinted in* 1982 U.S.Code Cong. & Ad.News 4547, 4553.

The expressed intent of Congress to protect farmworkers is clear from the legislative history of the MSAWPA. Even so, Congress did not adopt the joint employer rationale without limitation. These limits are readily apparent from a review of the authorities cited by Congress.

In *Hodgson*, a fruit and vegetable company which engaged field workers through its crew leaders was held to be a joint employer with the crew leaders and liable to farmworkers for FLSA violations. In that case, Griffin and Brand was found to have exercised "considerable control over the crew leaders *and the harvest workers.*" 471 F.2d at 237 (emphasis added). Furthermore, Griffin and Brand provided forms to crew leaders to keep track of the number of baskets of vegetables picked. *Id.* at 236. The forms were in turn used by Griffin and Brand's bookkeeper to determine the amount of Social Security to be paid for each worker; weekly reports were sent by Griffin and Brand to an outside bookkeeper who was retained to do Social Security computations; and, at year's end, the requisite Social Security was paid to the government on a Griffin and Brand check from an "escrow fund" set up by Griffin and Brand. *Id.* With regard to the supervision of the harvest workers, the Griffin and Brand head field supervisor

told crew leaders what hour to be at work, assigned them a certain area to be harvested, and told the crew leaders the rate at which they should pay the harvest workers and whether to pay an hourly wage or piece rate. Griffin and Brand supervisors oversaw the work of the harvest workers and gave instructions to the crew leaders, who passed the instructions on to the harvest workers. *Id.* at 237.

The Fifth Circuit, in considering these facts, determined that Griffin and Brand was a joint employer of the harvest workers along with the crew leaders. In doing so, it adopted the following test:

In considering whether a person or corporation is an 'employer' or 'joint employer,' the total employment situation should be considered with particular regard to the following questions: (1) Whether or not the employment takes place on the premises of the company?; (2) How much control does the company exert over the employees?; (3) Does the company have the power to fire, hire, or modify the employment condition of the employees?; (4) Do the employees perform a 'specialty job' within the production line?; and (5) May the employee refuse to work for the company or work for others?

*Id.* at 237–38, quoting *Wirtz v. Lone Star Steel Company*, 405 F.2d 668, 669 (5th Cir.1968).

The second case cited by Congress in the legislative history set forth above, *Hodgson v. Okada*, 472 F.2d 965 (10th Cir.1973), presents facts strikingly similar to those presently before this Court. There, the Tenth Circuit reviewed the employment relationship between a crew leader, a cucumber grower, and a pickle processor. It found a joint employer relationship between the crew leader and grower, but determined the pickle processor was not a joint employer. The Court of Appeals stated:

Here, the only regular supervision of the workers came from the Okadas and they benefited from the work performed. The Okadas had the right to direct daily labor on the farm. HPC [the pickle processor]

did not have a representative on a daily basis. The Okadas suffered if the cucumbers were not harvested or if they did not meet HPC specifications. On at least one occasion, Eddie [Okada], threatened to fire a worker. The cost of the seed and harvesting operations was debited to the Okadas' account and they were paid the difference between these amounts and the value of the cucumbers delivered to HPC.

*Id.* at 968. The Tenth Circuit specifically considered and rejected the argument that the pickle processor in *Okada,* who was in the identical position of Holmes and Holmes in the present litigation, should be considered a joint employer. *Id.; see also Mendez v. Brady,* 618 F.Supp. 579, 581 (D.C.Mich.1985) (in FLCRA action, packing shed dismissed pursuant to Fed.R.Civ.P. 41(b) while grower and crew leader held to be joint employers).

Other cases support the conclusion that the Defendants are not joint employers. For example, in *Maldonado v. Lucca,* 629 F.Supp. 483, 485–86 (D.N.J.1983), the definition of "agricultural employer" under the MSAWPA was specifically considered. There, a grower was held to be jointly liable with the crew leader. The court found the grower had advanced the crew leader $3,500 for labor costs before the season began, had supervised the day to day operation of the farm, had assigned picking crews to particular fields, frequently walked through the fields, monitoring the harvesters' performance and had, significantly, directed the crew leader to fire two individuals. Furthermore, the grower had supervised the payroll records of the crew leader. The New Jersey District Court applied the *Griffin and Brand* factors outlined above and determined the grower was a joint employer with the crew leader. *Id.* at 487–89.

The Fifth Circuit has also considered joint employer relationships in cases interpreting the predecessor to the MSAWPA, the now repealed Farm Labor Contractor Registration Act, 7 U.S.C. § 2050a (1976 ed.). *See, e.g., Beliz v. W.H. McLeod & Sons Packing Co.,* 765 F.2d 1317 (5th Cir. 1985) (grower joint employer with crew leader where grower owned land, specified the number of harvest workers to be hired by the crew leader, provided housing to the workers, paid for their transportation, supervised the movement of crews from one field to another, supervised harvesting, and had authority to fire workers); *Salazar–Calderon v. Presidio Valley Farmers Assn.,* 765 F.2d 1334 (5th Cir.1985), *cert. denied,* 475 U.S. 1035, 106 S.Ct. 1245, 89 L.Ed.2d 353 (1986) (farmer association held joint employer where association had a contract of employment, specified the duration of employment, offered visa petitions, outlined employment conditions, including a work guarantee, an hourly rate guarantee and a transportation allowance); *Castillo v. Givens,* 704 F.2d 181 (5th Cir.1983) (grower jointly liable with crew leaders where grower kept records for crew leader, went to fields three to four times a week to make sure the workers were in the right fields and to check on the number of hands working, made the decision on when to start chopping cotton in the season, on which fields to chop and which order the fields were to be chopped, directed the crew leader on which weeds were to be chopped and on which weeds were not to be chopped, and who had previously accepted liability determined by the Department of Labor on farm workers held to be a joint employer). An application of the reasoning of those cases to the facts of this case would lead the Court to conclude that Holmes and Holmes was not a joint employer.

The determination of whether a joint employment relationship existed in this action must be made in light of the formulation set forth in *Hodgson v. Griffin and Brand of McAllen, Inc.:*

A. *Did the employment take place on company premises?*

The employment of Plaintiffs took place at Bracher Farms, not on the premises of Defendant Holmes and Holmes. While Plaintiffs attempted to claim an integrated operation between Mr. Puente, Bracher Farms, and Holmes and Holmes, they cited no facts establishing such an operation. The only connection between Bracher Farms and Holmes and Holmes was a con-

tract for a grower to sell cucumbers to a produce buyer. This straight-forward contractual relationship does not establish an "integrated farming operation."

### B. *Did the company exercise control over the employees?*

Holmes and Holmes did not exercise control over the employees. The parties' stipulations establish that the Plaintiffs' crew leader, Mr. Puente, was an independent contractor and was not employed by Holmes and Holmes. He owned his own equipment (two tandem trucks, a bus and a Suburban); he advertised for workers on the radio; he performed a variety of jobs, such as transporting produce for long distances and for other companies; he kept his own records on his employees; he carried liability insurance on his automobiles in order to comply with government requirements for crew leaders; he complied with Texas Employment Commission rules and regulations and paid unemployment insurance; he expended over $50.00 in gas costs on the date Plaintiffs worked for him; and he was subject to incurring losses in his business. Mr. Puente considered himself to be an independent businessman, and the facts establish that he was. *See Usery v. Pilgrim Equip. Co., Inc.,* 527 F.2d 1308, 1313–14 (5th Cir.), *cert. denied,* 429 U.S. 826, 97 S.Ct. 82, 50 L.Ed.2d 89 (1976).

### C. *Did the company have the power to hire, fire, or modify the employment condition of the employees?*

Mr. Puente was solely in charge of hiring and firing his employees. Holmes and Holmes did not have any input into these matters.

### D. *Did the employees perform a "specialty job" within the production line?*

It appears that the employees performed a specialty job. The cucumber plant must be carefully lifted, the cucumber plucked from the plant and placed in the basket. Then, the cucumber plant is to be carefully returned to its place so as not to damage the plant. Cucumber picking was recognized as a skilled job in *Donovan v. Brandel,* 736 F.2d 1114, 1117–18 (6th Cir.1984).

### E. *May the employee refuse to work for the company or work for others?*

Plaintiffs failed to show that they could not refuse to work for whomsoever they chose to work for.

## III. CONCLUSION

The Court hereby determines that no joint employer relationship existed between Defendants. This determination is based upon Plaintiffs' failure to satisfy the elements of the *Griffin and Brand* formulation. Also persuasive is the Tenth Circuit's decision in *Hodgson v. Okada,* which is nearly on all fours with the facts presented in this action. Because Defendant Holmes and Holmes was not an employer of Plaintiffs, there can be no FLSA liability and no MSAWPA liability on the part of Holmes and Holmes.

Accordingly, it is hereby ORDERED that Defendant Holmes and Holmes' motion for summary judgment is GRANTED.

It is further ORDERED that Plaintiffs' motion for partial summary judgment be is DENIED.

It is further ORDERED that Plaintiffs' claims against Defendant Holmes and Holmes are DISMISSED.