**MOUNTAIN BROOK ORCHARDS, INC., Appellee,**

v.

**Ray MARSHALL, Secretary of Labor, United States Department of Labor, Appellant.**

**No. 80–1306.**

United States Court of Appeals, Third Circuit.

Argued Oct. 10, 1980.

Decided Jan. 21, 1981.

As Amended March 6, 1981.

Carin Ann Clauss, Sol. of Labor, Ronald G. Whiting, Associate Sol., Paul E. Myerson, Laurie E. Rucoba (argued), Attys., U. S.

---

Dept. of Labor, Washington, D. C., for appellant.

Myers, Myers, Flower & Johnson, Edmund G. Myers (argued), Lemoyne, Pa., for appellee.

Before SEITZ, Chief Judge, HIGGINBOTHAM, Circuit Judge and MEANOR, District Judge.*

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

For almost two decades Congress has been concerned with the exploitation of migrant labor in agriculture. The record demonstrates that often migrant laborers have been cheated of their wages, overcharged for their purchases, transported in unsafe and uninsured vehicles, and forced to live in run down unsanitary housing that was destructive of their health and a repudiation of their inherent dignity as human beings.[1] While the plight of the victim has been self-evident, the specific solutions for eradicating these wholesale injustices have been more elusive. One of the Congressional tools designed to deter the worst abuses has been passage of statutes which require farm labor contractors to be certified by the Department of Labor and which prohibit any person from engaging the service of a farm labor contractor "unless he first deter-

mines that the farm labor contractor possesses a certificate from the Secretary that is in full force and effect at the time he contracts with the farm labor contractor." 7 U.S.C. § 2043(c) (hereinafter § 2043(c)).[2] For purposes of this appeal, the primary issue is whether a grower has violated the statute when he places a farm labor contractor in control of housing when the contractor has been certified for some purposes, but not for housing matters.

In effect, the district court held that a farm labor contractor's certification under § 2043(c) for any one endeavor, was a certification in "full force and effect" for *all* endeavors. We disagree with the lower court and reverse. Since the other issues raised by the grower were not reached by the district court because of its construction of § 2043(c), we remand the case for the court's adjudication of each of those issues.[3]

### I.

The pertinent facts of this case are not in dispute. Mountain Brook Orchards (hereinafter Mountain Brook) runs an orchard comprising some eight hundred acres on which it grows fruit such as apples and peaches. In the summer of 1977, Mountain Brook hired Frank Lowe, Ozzie Lovett, and Emmett Rozier as farm labor contractors. In this capacity, they furnished migrant laborers to help in harvesting the orchard's

---

* Honorable H. Curtis Meanor, of the United States District Court for the District of New Jersey, sitting by designation.

1. S.Rep.No.93–1295, 93d Cong., 2d Sess. *reprinted in* [1974] U.S.Code Cong. & Ad.News 6441; S.Rep.No.202, 88th Cong., 2d Sess. *reprinted in* [1964] U.S.Code Cong. & Ad.News 3690. Hearings on H.R.5060 before the General Subcommittee on Labor of the Committee on Education and Labor, 88th Cong. 1st Sess. 121 (1963) (statement of then Secretary of Labor, Willard Wirtz).

2. For text of § 2043(c) see p. 5 *infra.; See* 7 U.S.C. §§ 2041, *et seq.* (1974) (codification of Act of September 7, 1964, Pub.L.No.88–582, 78 Stat. 920, as amended by Pub.L.No.93–518, 88 Stat. 1652 (1974)).

3. The district court addressed only this claim although three other arguments were advanced by Mountain Brook Orchards in support of its

appeal. First, it argued that it did not have notice that a valid, unrevoked and current certificate of registration was not "in full force and effect" when a crew leader controlled housing without authorization, and that, as a consequence, the Secretary's interpretation cannot be enforced against it. Second, it contended that the administrative law judge's finding that the crew was in control of the housing was unsupported by substantial evidence, and his legal interpretation of "control" in error. Finally, it asserted that the penalty assessments it incurred were unwarranted because the putative violations were highly technical, affected no migrant workers, and based upon an unknown interpretation by the Secretary initially applied against Mountain Brook.

The district court did not reach any of these arguments since its resolution of Section 2043(c) of the Farm Labor Contractor Registration Act foreclosed any need to do so.

crop. The contractors possessed an unrevoked and current certificate of registration which authorized them to recruit, solicit, hire, furnish and transport migrant workers; but they were not authorized to house migrant workers. Mountain Brook admitted that the certificate cards of contractors Lowe, Lovett and Rozier were marked "Not Authorized" for housing in 1977 at a time when each of the contractors and the migrant labor force were living in housing at Mountain Brook. App. at 112. Thus, none of the contractors were certified to house migrant workers when they were hired. When Jerry Edwards, the manager of Mountain Brook, hired them, he inspected each of their certificates of registration, and, at that time he was made aware that each registration card clearly showed upon its face that the contractor was *not* authorized to house migrant workers.

## II.

These proceedings started when on February 17, 1978 and March 15, 1978 the Secretary of Labor (hereinafter Secretary) assessed civil money damages totalling $750.00 against Mountain Brook pursuant to Section 9(b)(1), 7 U.S.C. § 2048(b)(1). He alleged that the owner violated § 2043(c) by engaging an unregistered farm labor contractor. A hearing was timely requested by Mountain Brook. On April 10, 1978, this hearing was held before Administrative Law Judge (ALJ) Eli Nash, Jr. in Harrisburg. In a thoughtful opinion he discussed the pivotal question, which is not now before us,[4] as to whether Mountain Brook or the labor contractors were in "control" of the housing within the context of the Farm Labor Contractor Registration Act (hereinafter the Act). After concluding that the contractors were in control of the housing he affirmed the Secretary's assessment of the $750.00 penalty. Mountain Brook appealed to the district court, which reversed the ALJ's decision and found the Secretary's interpretation of § 2043(c) erroneous. In arguing this appeal, the counsel for the

Secretary stressed that their interest was not in the nullification of a $750.00 fine but rather a concern that the trial court's interpretation was "... plainly unreasonable in light of the certificate itself, the statutory language and legislative intent." Appellant's brief at 27.

## III.

As the Supreme Court has repeatedly stressed "in any case concerning the interpretation of a statute the 'starting point' must be the language of the statute itself." *Reiter v. Sonotone Corporation*, 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979), *See also Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979); *Southeastern Community College v. Davis*, 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979); *Lewis v. United States*, 445 U.S. 55, 60, 100 S.Ct. 915, 918, 63 L.Ed.2d 198 (1979). Section 2043(c), provides:

> No person shall engage the services of any farm labor contractor unless he first determines that the farm labor contractor possesses a certificate from the Secretary that is in *full force and effect* at the time he contracts with the farm labor contractor. (Emphasis added).

The statutory construction issue here is what constitutes a certificate that is in full force and effect. Would a certificate granted for *supplying* migrant laborers be a valid certificate "in full force and effect" for *transporting* migrant labor? Would a certificate for *transporting* migrant labor be a certificate "in full force and effect" for the providing of *housing* services? For our purposes we must accept as correct the ALJ's finding that the farm labor contractors were in fact providing housing services, even though they did not have a Department of Labor certificate to provide housing services and even though on their actual certificate it was noted that they were "unauthorized" to provide housing services.

---

**4.** We recognize that while on appeal the issue as to whether the grower or the contractors were in control is not before us, but it will be a legal issue for the trial court to resolve upon remand.

Was engagement of the farm labor contractors who provided housing services a violation by the grower of § 2043(c)? The ALJ said providing such services clearly was in violation of the statute because § 2043(c) "... is clear on its face, and full force and effect means exactly what it says—that a certificate card only partially in effect is not valid" when the contractor is providing services for which there is no certification. App. at 114. In contrast the district judge held that § 2043(c) merely "requires the user of migrant laborers to first determine that the farm labor contractor possesses a certificate from the Secretary that is in effect, unrevoked," and that the unrevoked certificate is "in full force and effect" even for those services which the contractor had not been certified for. App. at 130. From our view § 2043(c) if read in isolation is somewhat ambiguous as to what endeavors are covered by certifications. It is essential, therefore, that we explore the meaning of the statute within the context of its legislative history so that we can ascertain the primary concerns and intent of Congress in passing this particular statute.

## IV.

Migrant workers have traditionally been a callously exploited group in America. As a consequence, in 1963 Congress passed the Farm Labor Contractor Registration Act. This Act provided for the registration and regulation of the activities of farm labor contractors—the individuals who recruit, solicit, hire, furnish and transport migrant agricultural workers. It was thought that this Act would serve to eliminate many of the abuses faced by the migrant labor force because it required farm labor contractors to obtain a certificate of registration from the Secretary of Labor before they engaged in any farm labor contracting activities. Moreover, the Act created provisions that compelled farm labor contractors to (1) disclose to all migrant workers the terms and conditions of their employment when they were recruited, and post these terms and those related to housing at both the work site and labor camp; (2) abstain from certain specified conduct; (3) obtain insurance

for and use safe vehicles to transport the workers; and (4) give each worker certain income and specific payroll information. Those who violated the Act were subject to a civil money penalty and the denial, suspension, revocation or refusal to renew the certificate of registration as well as possible criminal prosecution.

Unfortunately, the Act failed to accomplish its goal. As a result, it was amended in 1974 "to provide for the extension of coverage and to further effectuate the enforcement of the Act." S.Rep.No.93–1295, 93d Cong., 2d Sess., *reprinted in* [1974] U.S. Code Cong. & Admin.News 6441. In this respect, Senate Report Number 93–1295 declared:

[A]lthough the specific functions of the farm labor contractor, often called a 'crew leader' or 'crew pusher', might vary from job to job, his role essentially remains the same—a bridge between the operator and the worker. In many instances, the contractor is not only the recruiter, hirer, and transporter, but acts as the supervisor, foreman and paymaster as well. *In addition, the contractor frequently controls housing and other vital aspects of the workers' everyday needs* (Emphasis added). *Id.* at 2, U.S.Code Cong. & Admin.News 1974 at 6442.

Furthermore, this Senate Report stated that, among other things, one reason the 1963 Act had failed was that it simply did not place any responsibilities upon corporate growers. In this regard, the Senate Report noted:

There are several causes for the Act's ineffective enforcement to date. These include the difficulty of proving that the contractor is engaged in recruitment across state lines; *the absence of any requirement that those who benefit from the work of migrant laborers assume responsibility for engaging only registered farm labor contractors*; the relatively mild penalties provided by the Act; and the lack of a private remedy for aggrieved workers. The Committee is deeply concerned about this situation, and seeks to provide the Department with a more

realistic arsenal of remedies in order to deter and correct the widespread violations that now exist. (Emphasis added). *Id.* at 3, U.S.Code Cong. & Admin.News 1974 at 6443.

To meet this concern Senate Report Number 93–1295 explained:

### REGISTRATION REQUIREMENTS

Section 4 of the bill amends section 4 of the Act by requiring that persons utilizing the services of farm labor contractors *must first make a determination that such contractors are properly registered.* The Committee intends that this will place an affirmative duty on the person utilizing such services *before such services are in fact rendered.* The Department of Labor shall promulgate such rules and regulations as are necessary to effectuate and assure that only the services of *validly registered contractors are utilized.* (Emphasis added). *Id.* at 8, U.S.Code Cong. & Admin.News 1974 at 6448.

Section 4(a) of the Act [§ 2043(a)] proclaims as follows:

No persons shall engage in activities as a farm labor contractor unless he first obtains a certificate of registration from the Secretary, *and unless such certificate is in full force and effect,* and is in such person's immediate possession.

Consistent with § 2043(a), the Secretary's regulations on Farm Labor Contractor Registration state that "any person who desires to engage in any activity as a farm labor contractor, as defined in the Act and these regulations, must first obtain a Certificate of Registration authorizing each such activity." 29 C.F.R. § 40.3. Both § 2044(a)(4) and the regulations spell out that the housing of migrant workers is one of the activities included within the Act. Congress could not have been more explicit in its precise concerns about the housing of migrant labor than in § 2044(a)(4) which provides:

Issuance of certificate of registration— Persons Qualified

(a) The Secretary shall, after appropriate investigation, issue a certificate of registration under this chapter to any person who—

\*    \*    \*    \*    \*    \*

(4) has filed, under such terms as the Secretary may prescribe, a statement identifying each vehicle to be used by the applicant for the transportation of migrant workers, and *all real property to be used by the applicant for the housing of migrant workers,* during the period for which registration is sought, *along with proof* that every such vehicle and *all such housing currently conform to all applicable Federal and State safety and health standards* to the extent that such vehicle and all such housing are under the applicant's ownership or control; (Emphasis added).

Section 2043(c) of the Act reflects a parallel duty when it states that:

No person shall engage the services of any farm labor contractor unless he first determines that the farm labor contractor possesses a certificate from the Secretary that is in *full force and effect* at the time he contracts with the farm labor contractor. (Emphasis added).

In this case, the ALJ upheld the Secretary's interpretation. In essence, he reasoned that to be in full force and effect a certificate must authorize the challenged service engaged in by the contractor.

The Secretary has created a certificate registration system which makes provision for the specific registration of each activity. The certificate, by itself, authorizes one to recruit, solicit, hire and furnish migrant workers. But it does not authorize one to either transport or house workers. For these latter activities, *supplemental* authorization is necessary.[5]

---

· **5.** This registration system was developed by the Employment Standards Administration, Wage and Hour Division, which is responsible for the enforcement of the Act. It was devised

in this manner because it was known that not all farm labor contractors would seek to either house or transport workers since to do so required both proof of adequate insurance and

Indeed, on the face of the certificate it is stated that

I certify that the person named above is registered pursuant to the Farm Labor Contractor Registration Act of 1963, as amended and is authorized to perform activities covered by the Act, *subject to any restrictions indicated on Certificate Supplement.*

| Transportation | ☐ Authorized | ☐ Not Authorized |
| Housing | ☐ Authorized | ☐ Not Authorized |

And the back of the card indicated as follows:

This certificate is based on the Farm Labor Contractor Registration Act of 1963, as amended and regulations issued thereunder, and on my application for registration. *It may be revoked or suspended or its renewal denied, for non-compliance with the Act or regulations, including applicable requirements for transporting and housing migrant workers.* Such non-compliance may constitute a criminal offense.

Notwithstanding the regulations, the legislative history, and the importance of these safeguards to migrant workers and farm owners, the district court judge reasoned that Congress intended to place but a limited obligation on corporate farm growers— an obligation to aid the registration of farm labor contractors by compelling them to hire only contractors who possess valid unrevoked certificates. In this respect, it did not matter to the district court if the Secretary had specifically certified that the contractor was unauthorized to supply housing. From the district court's view, a certificate for transportation was an authorization to supply housing. For the trial judge, "in full force and effect" meant only an unrevoked general certificate that was currently in effect for *any* type of activity. We have found no legislative history that supports the trial judge's construction of the statute. We find the reasoning of the district court to be unacceptable. The right to operate a bus service does not give one permission to operate the restaurants at which the passengers eat. Nor does the right to drive a car authorize one to run a rooming house. That Congress saw these distinctions clearly is indicated by the very specificity of § 2044(a)(4). The trial judge's holding seems repugnant to the legislative scheme of the statute, and the specific problems which Congress identified.

Congress was concerned primarily about the plight of migrant laborers. The ruling of the trial judge might well open the floodgates to subterfuge and abuse of the very rights which Congress created to protect migrant workers. Under the trial judge's theory all that a grower need do is hire anyone certified merely to recruit or supply labor and then use that same contractor (who was not certified to provide transportation or housing) to provide unsafe transportation and unsanitary housing for the grower's migrant workers. By such a subterfuge the grower would escape all responsibility for the plight of his migrant workers because he had hired a contractor with a valid unrevoked certificate to supply labor. Congress could not have intended such an anomalous result. We hold that in this context the "in full force and effect" standard requires not only a current, valid and unrevoked certificate but also a certificate authorized for all the activities for which the grower engages the contractor. In reaching this conclusion, we do not rely on the challenged opinion letter of the Wage-Hour Administrator, [1973–1978 Transfer Binder] LAB.L.REP. (CCH) ¶ 31,092 (Opinion Letter March 9, 1977), which was considered by the administrative law judge.

## V.

For the reasons stated above, therefore, we will reverse the District Court judge with respect to his interpretation of § 2043(c) and remand the case to the District Court for the resolution of the three other issues which it left undecided.

---

compliance with health and safety standards. Hence, although all contractors must register, *see* 29 CFR § 40.3, *only those who desire to house or transport workers must file for supplemental information.* (Emphasis added). *See* 29 CFR §§ 40.11–40.20.