Maria MENDEZ, et al., Plaintiffs,

v.

Robert BRADY, the Brady Bunch, Inc.,
a Michigan corporation, and Fidel
Chavez, Defendants.

No. G82–391 CA6.

United States District Court,
W.D. Michigan, S.D.

June 6, 1985.

■■■■■■■■■■■■■■■■

Michigan Migrant Legal Assistance Project, Inc. by Mark Schneider, Richard G. Kessler, Ronald G. Kirschenheiter, Grand Rapids, Mich., and Vincent H. Beckman, Emirene Mendoza, Scott Stensaas, Berrien Springs, Mich., for plaintiffs.

Landman, Luyendyk, Latimer, Clink & Robb by Thomas H. Andres, Jr., Parmenter, Forsythe, Rude, Van Epps, Briggs & Fauri by Arthur M. Rude and James R. Seastrom, Muskegon, Mich., for defendants.

## OPINION AND ORDER

HILLMAN, District Judge.

Plaintiffs in this case are 22 migrant farm workers who picked blueberries for defendant Brady Farms, Inc., a large blueberry growing operation located in Ottawa County, Michigan. Plaintiffs' amended complaint includes causes of action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (FLSA), the Farm Labor Contractor Registration Act, 7 U.S.C. § 2041, *et seq.* (FLCRA),[1] and common law fraudulent misrepresentation for the years 1980 and 1982. Named as defendants are: Brady Farms, Inc. (Brady Farms); Fidel Chavez (Chavez), a crew leader for Brady Farms, in 1980 and 1982; The Brady Bunch, Inc. (Brady Bunch), a blueberry packing operation; and Robert L. Brady, a stockholder in, and general manager of, the corporate defendants.

On August 7, 1984, the court issued partial summary judgment against the defendants for violations of the FLCRA. In that opinion, the court held:

1) Defendant Chavez housed each plaintiff without proper certification in violation of 7 U.S.C. § 2050(a);

2) Defendant Chavez did not make statutory written disclosures to each plaintiff required by 7 U.S.C. § 2045(b);

3) Defendant Brady and defendant Brady Farms, Inc., engaged a farm labor contractor who was not certified to house each farmworker plaintiff in violation of 7 U.S.C. § 2043(c).

The remedy for these violations, pursuant to 7 U.S.C. § 2050a, b, was held in abeyance pending trial.

A bench trial was held over eight days, from September 18, 1984, until October 1, 1984. The court heard the testimony of 17 witnesses and received 125 exhibits. During trial defendants, The Brady Bunch, Inc., and Robert L. Brady, individually, were dismissed pursuant to Fed.R.Civ.P. 41(b). This opinion constitutes the court's finding of fact and conclusions of law on the remaining issues as required by Fed.R. Civ.P. 52(a).

### *Plaintiffs' FLSA Claim*

Plaintiffs allege that defendant Brady Farms violated the FLSA in two respects. Plaintiffs claim that defendants failed to pay them the minimum wage as required by 29 U.S.C. § 206(a). The prescribed minimum wage was $3.10 for each hour worked in 1980, and $3.35 for each hour worked in 1982. Plaintiffs also claim that defendants failed to keep accurate records as required by the FLSA, 29 U.S.C. § 211(c), and regulations promulgated thereunder.

As a threshold matter, the court finds that the relationship between each of the plaintiffs and the defendant Brady Farms triggered the protection of the FLSA. The business of Brady Farms involves commerce among the several states within the meaning of 29 U.S.C. § 203(b). Yet, defendants argued that some of the plaintiffs were not employees of Brady Farms because they were not "registered," but rather were only "helpers" to other employees who were "registered." However, all of

---

1. The Farm Labor Contractor Registration Act, 7 U.S.C. §§ 2041 to 2055, was repealed on January 14, 1983, by Pub.L. 97–470. The subject matter of those sections is now covered by the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1801, *et seq.*

the plaintiffs picked blueberries in the fields of defendant Brady Farms. Fidel Chavez, the crew leader for Brady Farms, was aware that all of the members of the various families were working in the fields. There was no evidence that Chavez, or any other Brady Farms' agent attempted to prevent any of the plaintiffs from working because they were not "registered."

FLSA has the following definitions, at 29 U.S.C. § 203:

"(d) 'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee ...;

(e)(1) ... the term 'employee' means any individual employed by an 'employer';

(g) 'Employ' includes to suffer or permit to work."

The regulations promulgated pursuant to the FLSA further explain the meaning of "suffer or permit to work" at 29 C.F.R. 785.11:

"Work not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift. He may be a pieceworker, he may desire to finish an assigned task or he may wish to correct errors, paste work tickets, prepare time reports or other records. The reason is immaterial. The employer knows or has reason to believe that he is continuing to work and the time is working time."

(Citations omitted.)

The regulations further define the duty of management regarding work performed on its behalf, at 29 C.F.R. 785.13:

"In all such cases it is the duty of management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rules and must make every effort to do so."

(Citations omitted.)

■ The regulations make it clear that any of the plaintiffs who were "suffered or permitted" to harvest blueberries for the benefit of defendant Brady Farms were employees of defendant Brady Farms. Defendant Brady Farms made no effort to fulfill its duty to keep so-called "helpers" from working in the fields if it did not wish to employ those individuals. Testimony demonstrated that defendants had knowledge of the pattern and practice of all members of a family to work in the fields. To accept defendants' attempted registered employee/helper distinction in this context would allow growers to circumvent minimum wage requirements by registering only one member of a family, having the entire family work and then combining the amount earned by a family on the piece rate basis to satisfy minimum wage for the registered worker. *Cf Mitchell v. Hertzke*, 234 F.2d 183 (10th Cir.1956). (Where snap bean picking was done by families working as a unit and only records which were kept were of the head of a family who collected pay, there was a violation of 29 U.S.C. § 211(c) and regulations promulgated thereunder.)

■ Further, I find that plaintiffs were not independent contractors. Plaintiffs performed unskilled work under supervision. Plaintiffs had no control over the growing of blueberries and were assigned rows by defendant Chavez or his son, Arturo Chavez. Plaintiffs' work did not involve any opportunity for profit or loss, depending on their managerial skill. Plaintiffs had no investment in equipment or materials, nor did they employ helpers. They were hired for the duration of the harvest season. They performed work integral to the business of Brady Farms. *See, e.g., Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748 (9th Cir.1978); *cf. Donovan v. Brandel*, 736 F.2d 1114 (6th Cir. 1984), *reh'g denied*, 760 F.2d 126 (6th Cir. 1985).

■ Further, I find that Chavez's status as crew leader does not affect Brady Farms' status as an employer of the employee-plaintiffs. Plaintiffs worked on the

premises of Brady Farms. Brady Farms had the ultimate power to hire and set the employment conditions for plaintiffs although some of this power may have been delegated to Chavez. Brady Farms, through Robert Brady, effectively controlled the manner in which Chavez discharged his supervisory functions. Brady Farms computed each individual's pay, issued checks and deducted taxes. Given these factors, Brady Farms was the employer of plaintiffs within the meaning of the FLSA. *See, e.g., Hodgson v. Griffin and Brand McAllen, Inc.,* 471 F.2d 235, 237 (5th Cir.1973); *Castillo v. Givens,* 704 F.2d 181, 192 (5th Cir.1983). Accordingly, Brady Farms was required to pay each plaintiff minimum wage under the FLSA and keep accurate records of the hours worked by each plaintiff.

For their work picking blueberries, plaintiffs were compensated at a rate of $2.00 per "flat." Each flat consisted of 12 pints of blueberries. To earn the minimum wage of $3.10 per hour in 1980, plaintiffs would have had to pick an average of 1.55 flats per hour. In 1982, plaintiffs would have had to average 1.67 flats per hour to earn the minimum wage of $3.35. Plaintiffs maintain that they did not pick sufficient flats per hour to earn minimum wage, which claim defendants contested.

Defendants submitted records of flats picked and hours worked for the 1980 and 1982 seasons. According to these records, all of the plaintiffs for whom defendants kept records earned at least minimum wage. In fact, according to defendants' records, every blueberry picker in 1980 and 1982 earned at least minimum wage for every hour worked on defendants' piece rate basis of compensation. However, plaintiffs challenge the accuracy of defendants' records with respect to the number of hours worked by each plaintiff.

29 C.F.R. § 500.80 lists the payroll information an employer of migrant workers must maintain:

"(a) Each farm labor contractor, agricultural employer and agricultural association which employs any migrant or seasonal agricultural worker shall make and keep the following records with respect to each worker, including the name, permanent address, and Social Security number:

(1) The basis on which wages are paid;

(2) The number of piecework units earned, if paid on a piecework basis;

(3) The number of hours worked;

(4) The total pay period earnings;

(5) The specific sums withheld and the purpose of each sum withheld; and

(6) The net pay."

I have carefully reviewed defendants' records in light of other evidence introduced in this case and agree that they are unreliable with respect to the hours worked by each plaintiff. The 1980 records are inadequate and/or unreliable regarding hours worked for the following reasons: First, the records do not list all workers. As discussed *supra* at 581–582, defendants' attempt to distinguish between registered and unregistered employees does not comport with the definitions of the FLSA. Defendants did not controvert evidence that plaintiffs Sandra Garcia, Santos Zamora, Sr., Jose Perez, and Maria Concepcion Zamora all worked picking blueberries in 1980. There are no records of the hours worked for those plaintiffs for 1980. Defendants' 1980 records also indicate on their face that in many instances one record was kept for an entire family, with no record of the hours worked and flats picked for each individual member of the family.

Second, inconsistencies in trial testimony and impeachment by deposition testimony severely undermined the reliability of defendants' records of hours worked. Defendants introduced exhibits entitled, "Flats Picked Week Ending" for the year 1980. There were numerous inconsistencies regarding the method used for keeping track of hours worked, who recorded the hours, and when they were turned in to defendant Brady Farms. Further, there were unexplained inconsistencies between the records kept by Chavez and the summary of hours and flats prepared by Wen-

dy Young, the bookkeeper for Brady Farms. Yet, defendant's bookkeeper testified that her summary was prepared from Chavez's records. Finally, Chavez could not produce the "field notes" which allegedly formed the basis of the records.

For 1982, it was uncontested that Chavez did not turn in a record of hours worked to Brady Farms. Rather, he turned in records which only reflected the number of flats picked. Chavez testified that hours were recorded by his daughter after the "flats picked" sheets were returned to him by Brady Farms.

Chavez further testified that the hours were taken from a field notebook, which he could not produce. Again, a number of inconsistencies exist in Chavez's testimony regarding the method used to keep track of and record hours in 1982. Chavez's 1982 records of hours worked were again inconsistent with payroll figures prepared by Brady Farm's bookkeeper, Wendy Young. Neither the source of these latter figures, nor the inconsistencies were explained. Additionally, defendants have no records for plaintiff Daniel Alvarez for 1982, although according to uncontested evidence he also picked blueberries at Brady Farms in 1982. Finally, defendants' records of hours worked by plaintiffs were not consistent with uncontroverted evidence that on a typical day when the harvest season was in full swing, workers picked for eight to ten hours. In sum, the court is persuaded that defendants' method of recording hours worked was haphazard at best and not worthy of reliance.

However, the court does not find by a preponderance of the evidence that defendants' record were deliberately falsified as plaintiffs have maintained. Rather, it appears that defendants have failed to devise an accurate and reliable system for keeping track of its workers' hours. In their post-trial brief, defendants justify flaws in their record-keeping system on the ground that the unique context of fruit harvesting

makes accurate record keeping onerous. The court does not doubt that unique aspects of harvesting crops make record keeping a demanding task. Nevertheless, defendants cite to no legal authority, nor is the court aware of any, which relieves an employer from compliance with the FLSA's requirement that it keep accurate records of the hours worked by each employee.

Having determined that defendants' records indicating that all of the workers at Brady Farms in 1980 and 1982 made minimum wage are not reliable and, therefore, not conclusive, it is necessary to determine whether the plaintiffs met their burden of proving that each of them performed work for which he was improperly compensated. *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). I find that plaintiffs have established by a preponderance of the evidence that each did not consistently earn minimum wage when compensated at the piece rate of $2.00 per flat picked. This conclusion is based on the following factors. At least one member of each family group testified that the members of that family did not earn minimum wage for their work at Brady Farms. This assertion was consistent with the testimony of two non-party witnesses. Andres Herrera was a crew leader for Brady Farms in 1980. He testified that workers under his supervision were not guaranteed minimum wage; that he was never advised to keep track of workers' hours, nor advised that workers under him must be paid minimum wage. He further testified that workers could average 1.5 flats per hour in "average" picking. By inference, the average was less than 1.5 flats per hour when the picking was poor.[2] Abelino Garza, another crew-leader for Brady Farms during the relevant time, also testified that he was not advised to pay his workers minimum wage. He further stated that he was not advised to determine whether his workers were exempt from minimum wage requirements.

**2.** According to uncontroverted evidence, the quality of picking and, therefore, how many flats per hour a worker could pick varied con-

siderably depending on the time of the season and the quality of the blueberry row.

According to Garza, some of the workers made minimum wage and some did not. He stated that it would be difficult for the average picker to make minimum wage when picking in a bad row or when the blueberries were "new." Finally, the testimony of defense witnesses Alberto Aguilar and Andres Salinias, while more equivocal, did not controvert plaintiffs' claims that it was not always possible for every worker to pick sufficient flats per hour to earn minimum wage.

Defendants argued that the differences between their record of hours worked and those claimed by plaintiffs is that defendants' records account for only "productive" time. However, there was no evidence that defendants employed any systematic method for determining productive versus non-productive time. Defense counsel argued that many workers come and go from the fields, and, therefore, do not work a full day. Yet the uncontroverted evidence was that the vast majority of workers picked continuously while they were in Brady Farms' fields. Further, no evidence was offered that any plaintiff left the blueberry field during typical work hours on any given day, with one exception. There was evidence that the Mendez family left early on one occasion for which they were fired. Accordingly, I find defendants' contention that their records accurately reflect productive as opposed to non-productive hours not credible.

Having determined that plaintiffs performed some work for which they were uncompensated raises the issue of how much uncompensated work was in fact performed. As noted, an employee who brings suit for minimum wage has the burden of proving that he performed work for which he was not properly compensated. In *Anderson v. Mt. Clemens Pottery Company, supra,* the Court discussed the nature of plaintiff's evidentiary burden to establish the amount of uncompensated work performed. That opinion is quoted at length because it is critical to a resolution of plaintiffs' FLSA claim.

"An employee who brings suit under § 16(b) of the Act for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated. The remedial nature of this statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee. Due regard must be given to the fact that it is the employer who has the duty under § 11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy. It is in this setting that a proper and fair standard must be erected for the employee to meet in carrying out his burden of proof.

When the employer has kept proper and accurate records, the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes, a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then

shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative [sic] the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of § 11(c) of the Act. And even where the lack of accurate records grows out of a bona fide mistake as to whether certain activities or non-activities constitute work, the employer, having received the benefits of such work, cannot object to the payment for the work on the most accurate basis possible under the circumstances.... It is enough under these circumstances if there is a basis for a reasonable inference as to the extent of the damages."

(Citations omitted.) *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. at 687–88, 66 S.Ct. at 1192–93, 90 L.Ed. at 1522–23.

The question then is how many more hours did plaintiffs work than they were properly compensated for? Plaintiffs submitted records of hours worked based on a reconstruction of those hours for the most part from memory. Like defendants, plaintiffs' task was a difficult one since neither the hours nor the days worked are regular when crops are being harvested. Rather, they vary depending on the state of the crop and the weather. After a careful examination of each of plaintiffs' records and a comparison with those of the defendants, I do not find that the documentary evidence submitted by plaintiffs provides a basis for a just and reasonable inference of the amount of uncompensated work performed. The court need not accept every element of the plaintiffs' case simply be-

cause the defendants' records were found to be inaccurate. *Cf. Donovan v. Kentwood Development Co., Inc.*, 549 F.Supp. 480 (D.Md.1982); *Hodgson v. Okada*, 472 F.2d 965 (10th Cir.1973); *Hodgson v. American Concrete Construction Company*, 471 F.2d 1183, 1185–6 (6th Cir.), *cert. denied*, 412 U.S. 949, 93 S.Ct. 3007, 37 L.Ed.2d 1001 (1973).

While the defendants' records appear to understate the hours worked, plaintiffs' records appear to overstate them. This inference is based on the following factors: I find defendants' records unreliable with respect to the hours worked on any given day or for any individual plaintiff. However, I find no reason to doubt their accuracy with respect to recording which days picking was done or which individuals worked on any given day.[3] Plaintiffs' records indicate that picking was done on July 10 and 11, 1980, whereas defendants' records show no picking until July 14, 1980. Another significant problem with plaintiffs' records is that they show individual plaintiffs as having worked on days when defendants' records indicate the individual did not work at all. Finally, while I was persuaded that plaintiffs could not consistently pick sufficient flats to earn minimum wage, considering the evidence as a whole, I am unable to accept that the average number of flats per hour was as low as plaintiffs' records indicate.

The testimony of plaintiffs and non-party witnesses supports an inference that depending on the skill of the picker, and the condition of the berries, the necessary flats per hour could not be picked. However, the evidence does not support an inference that a worker would average only one-half of a flat or less per hour as many of the plaintiffs' records indicate. For example, at trial Maria Alvarez testified that she generally picked one flat per hour in 1982. Yet her records indicate that she picked only approximately one flat every three hours. I am not persuaded that the aver-

---

**3.** At least with respect to those workers defendants considered to be "registered," I find defendants' records accurate regarding the days each individual picked and the number of flats picked.

age number of flats a worker could pick in an hour was that small. Robert Brady and Fidel Chavez gave credible testimony that if the picking in an area became extremely poor, machines were used to complete the picking in that area.

Having concluded that plaintiffs performed some work for which they were uncompensated and that neither the defendants' nor the plaintiffs' records were reliable with respect to hours, left the task of determining a method for computation of plaintiffs' unpaid wages. Recovery under the FLSA should not be denied because proof of the number of hours worked is inexact or not perfectly accurate. Where an employee has demonstrated he was improperly compensated for some work performed, he has a right to recovery even the amount may be uncertain and damages difficult to calculate. *Anderson v. Mt. Clemens Pottery, supra; Donovan v. Kentwood Development Co., Inc.,* 549 F.Supp. 480 (D.Mo.1982); *Hogdson v. Ricky Fashions, Inc.,* 434 F.2d 1261, at 1263–64, *reh'g* denied, (5th Cir.1970).

At trial, Maria Alvarez testified that she was not a very fast picker, but could average a flat per hour. Records of Hilda Martinez and those of the Mendez family indicate that they picked approximately between three quarters of a flat and one flat per hour. The average from the Mendez records should be adjusted upward somewhat because the average includes recorded hours on days where defendants' records establish that individual Mendez plaintiffs did not pick. Based on the testimony of Maria Alvarez and the Mendez and Martinez records, which I find among the more reliable of plaintiffs' records, I find it just and reasonable to infer that plaintiffs picked an average of one flat per hour over the course of the 1980 and 1982 blueberry seasons respectively. Defendants' records of flats picked can, therefore,

be used to estimate the number of hours worked.

One of the few points of agreement between the parties is the accuracy of defendants' records with respect to the total flats picked by either the "registered" individual plaintiffs or the family group. The parties also agree that plaintiffs were paid $2.00 per flat for all of those recorded flats.[4] Therefore, the following method was utilized to compute wages due each plaintiff. The number of flats picked by each plaintiff was used as the basis for an estimate of the number of hours worked by that individual. Where more than one individual was included on one check, the total flats picked was divided by the number of individuals included on the check to compute the wages paid and flats picked for each individual. That number of hours was then multiplied by $3.10 for 1980 and $3.35 for 1982 to compute the minimum wage each plaintiff should have been paid. Wages actually paid to each plaintiff were then subtracted from what that plaintiff should have earned at minimum wage.

The following are examples of the method used. Flats picked by Juan Mendez were recorded by defendants for Juan Mendez individually, i.e., the labors of "unregistered" employees were not attributed to him. Defendants' records establish that Juan Mendez picked 169 flats for Brady Farms during the 1980 blueberry season. Therefore, it was estimated that Juan Mendez worked 169 hours for Brady Farms. At $3.10 per hour, he was entitled to $523.90 at minimum wage. He was in fact paid $338.00. Therefore, he is entitled to $185.90 in unpaid wages.

In contrast, defendants' records credit flats picked by both Daniel Alvarez and Balthazar Alvarez to Balthzar Alvarez. Together they picked 260 flats, approximately 130 each. It was, therefore, estimated that each worked 130 hours. Each was entitled to $435.50 at minimum wage.

4. There were minor discrepancies between defendants' raw records and plaintiffs' and defendants' summaries of those records. Where those discrepancies occurred, defendants' records were used as a basis for the computations since plaintiffs had stipulated that they were correct at least with respect to totals for flats picked and the amounts paid for those flats.

In fact, together they were paid $520, or $260 each. Therefore, Daniel and Balthazar Alvarez are each entitled to $175.50 in unpaid wages.

Based on these computations, the court finds that Brady Farms is liable to plaintiffs for payment of unpaid minimum wages in the following amounts:

| | |
|---|---|
| Julio Garcia | $ 71.50 |
| Sandra Garcia | 71.50 |
| Esperanzo Perez | 91.30 |
| Jose Perez | 91.30 |
| Juan Mendez | 185.90 |
| Maria Mendez | 173.80 |
| Erasmo Mendez | 198.00 |
| Antonio Mendez | · 177.10 |
| Josefino Mendez | 195.80 |
| Santos Zamora | 154.55 |
| Hilda Martinez | 121.00 |
| Josefina Zamora | 137.50 |
| Israel Zamora | 126.50 |
| Maria Zamora | 146.30 |
| Santos Zamora, Sr. | 137.50 |
| Idalia Garza | 143.00 |
| Esmeralda Zamora | 114.00 |
| Maria C. Zamora | 137.50 |
| Maria Alvarez | 149.17 |
| Daniel Alvarez | 175.50 |
| Juan Carlos Alvarez | 166.70 |
| Balthazar Alvarez | 175.70 |

Plaintiffs also claim entitlement to mandatory liquidated damages equal to the amount of unpaid wages. The FLSA states, at 29 U.S.C. 216(b):

"Any employer who violates the provisions of section 206 (the minimum wage section), ... of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."

The Sixth Circuit has ruled that a court must double the amount of uncompensated wages, unless the defendant who violated the FLSA acted both in good faith and upon reasonable grounds. *McClanahan v. Mathews*, 440 F.2d 320 (6th Cir.1971). Other circuits that have considered the question of liquidated damages under FLSA

also apply this test. *See Doty v. Elias*, 733 F.2d 720, 725 (10th Cir.1984), for citations.

■ I find that Brady Farms, Inc., did not act upon reasonable grounds in failing to insure that each plaintiff was paid minimum wage for work performed in 1980 and 1982. Robert Brady testified that he had been aware of the obligation to pay minimum wage since at least 1974. Brady Farms has been found in violation of the FLSA on a prior occasion. The alleged difficulty in formulating an accurate and reliable system for registering each worker permitted to work, and ascertaining that each worker was earning at least minimum wage on defendants' piece rate wage scale does not excuse defendants' failure to devise such a system for over five years.

Accordingly, each plaintiff is entitled to unpaid minimum wages as computed and an equal amount in liquidated damages.

*Plaintiffs' Claims Under the Farm Labor Contractor Registration Act*

As discussed *supra* at 581, the court has already granted plaintiffs summary judgment with respect to four violations of the FLCRA by defendants Chavez and Brady Farms. A decision regarding a remedy for those violations was held in abeyance pending trial of this matter.

Plaintiffs also claim that defendant Chavez violated his independent duty to keep accurate records and provide itemized receipts pursuant to FLCRA, 7 U.S.C. § 2045(e). That section states (as amended, 1974):

"Every Farm Labor Contractor shall ... in the event he pays migrant workers engaged in agricultural employment, either on his own behalf or on behalf of another person, keep payroll records which shall show for each worker total earnings in each payroll period, all withholdings from wages, and net earnings. In addition, for workers employed on a time basis, the number of units of time employed and the rate per unit of time shall be recorded on the payroll records, and for workers employed on a piece rate basis, the number of units of work per-

formed and the rate per unit shall be recorded on such records. In addition he shall provide to each migrant worker engaged in agricultural employment with whom he deals in a capacity as a farm labor contractor a statement of all sums paid to him (including sums received on behalf of such migrant workers) on account of the labor of such migrant worker. He shall also provide each such worker with an itemized statement showing all sums withheld by him from the amount he received on account of the labor of such worker, and the purpose for which withheld. He shall additionally provide to the person to whom any migrant worker is furnished all information and records required to be kept by such contractor under this subsection, and all information required to be provided to any migrant worker under this subsection. The Secretary may prescribe appropriate forms for the recording of information required by this subsection."

■ As discussed above, defendant Chavez did not keep accurate records of the hours plaintiffs worked. However, since plaintiffs were employed on the piece rate basis, it appears that Chavez's failure to accurately record hours is not a violation of 7 U.S.C. § 2045(e). However, Chavez also did not record the flats picked for each worker. Rather, the efforts of some plaintiffs were recorded under the name of another plaintiff. Also, it is uncontested that in 1980 and 1982 Chavez did not provide each worker with an itemized receipt as required by section 2045(e). Accordingly, Chavez violated that section of the FLCRA.

Plaintiffs further claim that defendant Brady Farms, Inc., violated the FLCRA in that it failed to keep accurate records. FLCRA states, at 7 U.S.C. 2050c (as amended, 1974):

"Any person who is furnished any migrant worker by a farm labor contractor shall maintain all payroll records required to be kept by such person under

Federal law, and with respect to migrant workers paid by a farm labor contractor such person shall also obtain from the contractor and maintain records containing the information required to be provided to him by the contractor under section 2045(e) of this title."

■ Brady Farms violated this section by failing to keep accurate record of hours worked by each worker in 1980 and failing to keep any record of hours worked in 1982, as required by the FLSA. Further, it is uncontested that Brady Farms failed to obtain and maintain from Chavez all of the records which Chavez was required to provide under section 2045(e). Accordingly, Brady Farms violated section 2050c of the FLCRA.

*Remedies for FLCRA Violations*

Plaintiffs seek $500 in liquidated damages for each violation of the FLCRA. Section 2050a(b) of the FLCRA was repealed on January 14, 1983, but is now codified in 29 U.S.C. § 1854(c)(1). It provides that for each intentional[5] violation the court may award damages up to the amount of actual damages, or $500 for each violation or other equitable relief. The cases interpreting 7 U.S.C. § 2050a(b) and its successor, 29 U.S.C. § 1854(c)(1), have not been uniform in their interpretation of the provision for $500 in statutory damages per violation. However, I am persuaded that the cases interpreting that amount as a ceiling, rather than as a mandatory and automatic assessment, correctly interpret the statutory language. *See De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225 (7th Cir.1983); *Alvarez v. Longboy,* 697 F.2d 1333 (9th Cir.1983).

Plaintiffs maintain that Brady Farms is jointly and severally liable for Chavez's violations of the FLCRA under the tort doctrine of respondeat superior. However, a review of the FLCRA makes clear that the statutory scheme is intended to impose independent duties on a farm labor contrac-

**5.** That defendants' violations were intentional within the meaning of the FLCRA is discussed in this court's opinion on plaintiffs' motion for summary judgment (August 7, 1984) at pages 583–584.

tor distinct from those of the grower who may also be the farm labor contractor's employer. For example, Chavez violated his independent obligation to obtain certification to house farm workers. Brady Farms violated its duty under the FLCRA when it failed to ascertain that Chavez was properly certified. Accordingly, I find Chavez independently liable for his own violations of the FLCRA.

Four factors have been considered by courts in assessing liquidated damages for violations of the FLCRA. Those factors are: (1) the nature of the violation; (2) the frequency and persistence of the violation; (3) the willfulness or inadvertence of the violation; and (4) the public interest in deterring FLCRA violations. *See, e.g., Alvarez v. Joan of Arc,* 658 F.2d 1217, 1224 (7th Cir.1981); *Washington v. Miller,* 721 F.2d 797 (11th Cir.1983); *De La Fuente v. Stokely-Van Camp, Inc.,* 514 F.Supp. 68, 80 (D.C.Ill.1981), *aff'd* 713 F.2d 225 (7th Cir.1983); *Alvarez v. Longboy,* 697 F.2d 1333 (9th Cir.1983). Considering these factors in light of the facts of this case, the following remedies for the FLCRA violations of defendants Chavez and Brady Farms are granted.

### 1. *Defendants' Violation of Housing Certification Requirements.*

One of the concerns of Congress in enacting the FLCRA was to provide a cause of action for migrant workers "forced to live in run-down unsanitary housing...." *Mountain Brook Orchards v. Marshall,* 640 F.2d 454, 455 (3d Cir.1981). Brady Camp was properly inspected and duly licensed by the Michigan Department of Health in both 1980 and 1982. However, the bathrooms and showers were often in an unsanitary condition, apparently as a result of overuse. Robert Aman, migrant camp inspector with the Michigan Department of Health, testified that in 1980 the Brady Camp had 64 separate violations of the State Health Code, a number higher than average. There was also uncontested testimony that the camp was at times overcrowded, which contributed to recurring problems with the bathrooms and showers. On the other hand, Aman testified that a good faith effort was made to promptly correct any violations, which testimony was corroborated by the documentary evidence.

In sum, I find from the evidence that while defendants did make consistent attempts to keep Brady Farms' housing in habitable condition, those efforts did not always go far enough. For example, sanitation problems appear to have been the result of overuse of facilities, rather than a blatant disregard of plaintiffs' right to decent housing. Nevertheless, it was and is ultimately defendants' responsibility to ensure that overcrowding and consequent overuse does not occur.

 Accordingly, I find an award of $100.00 per plaintiff for Chavez's violations of 7 U.S.C. § 2043(a) and $100.00 per plaintiff for Brady Farm's violation of 7 U.S.C. § 2043(c) appropriate.

### 2. *Chavez's Failure to Make Written Disclosure of the Terms and Conditions of Employment.*

Defendants have argued that Chavez's violation of this section of the FLCRA was merely technical and that only prospective injunctive relief should be granted. According to defendants, the violation was only technical because plaintiffs were familiar with migrant farm work and, therefore, already knew all of the terms and conditions of their employment. I cannot agree.

This case is illustrative of the purpose of the requirement that a farm labor contractor make written disclosure to prospective workers of the terms and conditions of employment. This critical section of the FLCRA gives farm workers the necessary knowledge to decide whether to accept a particular job. It also provides documentation of the bargain struck between the grower, or the crew leader, and the farm worker. In the instant case, the terms and conditions of employment were not made clear to plaintiffs in several respects. Some of the points of misunderstanding gave rise to this lawsuit.

First, while plaintiffs were aware that they would be paid $2.00 per flat of blueberries picked, they were not informed of their entitlement to earn at least minimum wage prior to accepting work. Second, there was confusion regarding the hours and days plaintiffs would be required to work. Plaintiffs attempted to prove at trial that they were forced to work in the rain and on Sundays. Plaintiffs' concern regarding Sunday work was the desire of at least some of them to take time off to attend church. I am not persuaded that plaintiffs were forced to work in the rain. With respect to work on Sundays, I find the evidence inconclusive. In any event, I am persuaded that plaintiffs were apprehensive regarding whether they would lose their jobs if they did not work on Sunday, at least when the harvest season was at its height.

Additionally, there was a lack of clarity regarding the hours per day plaintiffs were expected to work. Defendants maintained that, because plaintiffs were paid on a piece rate basis, they were not required to work any particular number of hours. Yet it was uncontroverted that the Mendez family was fired for leaving the fields "early." Unique demands of harvesting a crop may preclude the kind of predictable and regular hours enjoyed by workers in many occupations. Yet, the expectations regarding the terms and conditions of employment should be clearly communicated to workers to avoid the kind of misunderstandings which pervaded this case.

■ Accordingly, each plaintiff is awarded $100.00 in liquidated damages for Chavez's failure to provide written disclosure of the terms and conditions of their employment as required by the FLCRA.

3. *The Failure of Defendants Chavez and Brady Farms to Keep Records Required by the FLCRA.*

■ I do not agree with defendants that their failure to keep accurate and reliable records as required by the FLCRA is a mere "technical" violation. This case speaks for itself regarding the purpose of such record keeping requirements. Nevertheless, I do find injunctive relief the appropriate remedy in the circumstances of this case.

The substantive harm to plaintiffs as a result of these violations is their failure to obtain minimum wage and the difficulty in proving the existence and amount of underpayment. However, damages awarded pursuant to the FLSA for unpaid minimum wages provide compensation to plaintiffs. The liquidated damage provision of the FLCRA is intended to provide a remedy where actual damages are not ascertainable. Additionally, the FLSA's liquidated damage provision provides a deterrent against future failures to keep the records required by law.

Further, I am not convinced that defendants' willfully and cavalierly failed to keep the records required by law. Rather, I am satisfied that defendants have attempted to upgrade and improve their recordkeeping system. Their efforts to date have simply not gone far enough. Accordingly, defendants Chavez and Brady are enjoined to keep accurate records in full compliance with the FLCRA and the FLSA. Specifically, those records must accurately record the hours worked by each worker who is subject to the protection of the FLSA and who defendants permit to work. Further, defendant Chavez is enjoined to provide receipts to workers paid by him as required by law.

*Plaintiffs' State Law Claim for Fraudulent Misrepresentation.*

■ Plaintiffs also claim entitlement to actual and punitive damages on their state law claim of fraudulent misrepresentation. The elements of common law misrepresentation are:

(1) there must be material misrepresentation by the defendant;

(2) the representation must be false;

(3) it must be made with knowledge of its falsity;

(4) it must be made with the intention that plaintiffs act on it; and

(5) the plaintiff must have acted on it and suffered the injuries for which he sues.

*United States v. Cripps,* 460 F.Supp. 969, 975 (E.D.Mich.1978).

I do not find that defendant Chavez knowingly made material misrepresentations to plaintiffs in this case. I am not persuaded that Chavez engaged in any willful attempt to defraud plaintiffs Accordingly, relief on plaintiffs' state law claim is denied.

## CONCLUSION

Accordingly, defendant Brady Farms, Inc., is liable under the FLSA to plaintiffs for unpaid minimum wages in the following amounts:

| | |
|---|---|
| Julio Garcia | $ 71.50 |
| Sandra Garcia | 71.50 |
| Esperanzo Perez | 91.30 |
| Jose Perez | 91.30 |
| Juan Mendez | 185.90 |
| Maria Mendez | 173.80 |
| Erasmo Mendez | 198.00 |
| Antonio Mendez | 177.10 |
| Josefino Mendez | 195.80 |
| Santos Zamora | 154.55 |
| Hilda Martinez | 121.00 |
| Josefina Zamora | 137.50 |
| Israel Zamora | 126.50 |
| Maria Zamora | 146.30 |
| Santos Zamora, Sr. | 137.50 |
| Idalia Garza | 143.00 |
| Esmeralda Zamora | 114.00 |
| Maria C. Zamora | 137.50 |
| Maria Alvarez | 149.17 |
| Daniel Alvarez | 175.50 |
| Juan Carlos Alvarez | 166.70 |
| Balthazar Alvarez | 175.70 |

Brady Farms is also liable on plaintiffs' FLSA claim for an additional amount equal to each plaintiffs' unpaid minimum wages as liquidated damages.

Brady Farms is further liable for damages in the amount of $100.00 per plaintiff for violation of the FLCRA's housing certification requirements.

Further, Brady Farms is enjoined from future violations of the minimum wage and recordkeeping requirements of the FLSA.

Defendant Chavez is liable for statutory damages in the amount of $100.00 per plaintiff for violations of the FLCRA's housing certification requirements.

Further defendant Chavez is liable for statutory damages in the amount of $100.00 per plaintiff for violations of the FLCRA's requirement that he provide each worker with written disclosure of the terms and conditions of employment.

Defendants Brady Farms and Chavez are enjoined from future violations of obligations toward migrant workers now codified in the Agricultural Workers Protection Act, 29 U.S.C. § 1801, *et seq.,* formerly contained in the FLCRA, with respect to housing certification, recordkeeping, disclosure of the terms and conditions of employment and the provision of pay receipts.

Finally, the court finds no cause of action on plaintiffs' state law claim of fraudulent misrepresentation.

IT IS SO ORDERED.